**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **AFC INTERNATIONAL, LLC, and** ) | |
| ) | |
| **AFC WORLDWIDE EXPRESS,** ) | **Case No. _____** |
| **INC.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **STARR INDEMNITY &** ) | |
| **LIABILITY COMPANY, and** ) | |
| ) | |
| **STARR MARINE AGENCY OF** ) | |
| **CALIFORNIA, d/b/a STARR** ) | |
| **MARINE OF CALIFORNIA** ) | |
| **INSURANCE AGENCY** ) | |
| ) | |
| **Defendant.** ) | |

## <u>COMPLAINT</u>

For their Complaint against Starr Indemnity & Liability Company ("Starr

Indemnity") and Starr Marine Agency of California, d/b/a Starr Marine of

California Insurance Agency ("Starr Marine") (jointly, "Defendants"), Plaintiffs

AFC International, LLC ("AFC International") and AFC Worldwide Express, Inc.

("AFC Express") (jointly, "Plaintiffs" or "the AFC Entities") state as follows:

**THE PARTIES**

1.     AFC International is a limited liability company organized under the laws of Georgia, with its principal place of business at 3511 Naturally Fresh Boulevard, Atlanta, Georgia 30349.

2.     AFC International's sole member is AFC Express.

3.     AFC Express is a corporation organized under the laws of Georgia, with its principal place of business at 3511 Naturally Fresh Boulevard, Atlanta, Georgia 30349.

4.     Upon information and belief, Starr Indemnity is a corporation organized under the laws of Texas, with its principal place of business at 399 Park Avenue, 8th Floor, New York, New York 10022.

5.     Upon information and belief, Starr Marine is a corporation organized under the laws of California, with its principal place of business at 100 Montgomery Street, 24th Floor, San Francisco, CA 94104.

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as complete diversity exists between Plaintiffs and Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.      This Court has personal jurisdiction over Starr Indemnity and Starr Marine, as both have conducted business within this State and judicial district from which the claims in this action arise.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claims for relief occurred within this judicial district.

## FACTS COMMON TO ALL COUNTS

### The Insurance Policy

9.      On or about November 1, 2009, for good and valuable consideration, Defendants entered into an insurance policy under Policy No. MASICSF00000809 (hereinafter the "Insurance Policy," copy attached hereto as Exhibit 1), naming AFC Express as the insured.

10.     The Insurance Policy was entered into by a representative of Starr Marine, on behalf of Starr Indemnity.

11.     In addition to AFC Express, the Insurance Policy defines as the "Assured" any "subsidiary, associated, or allied company, corporation, firm, organization; and its interest in any partnership or joint venture in which it has at least fifty-one percent (51%) management control or ownership as now constituted

or hereafter is acquired[.]"  (*See* Insurance Policy, at Policy Declarations, Clause 1.)

12.     The definition of "Assured" in the Insurance Policy includes AFC International.

13.     Section IV of the Insurance Policy, entitled "Freight Forwarder's Errors & Omissions Liability," indemnifies Plaintiffs for legal liability "for a negligent act, error or omission, arising out of the Insured Operations as a Freight Forwarder, Common or Contract Carrier, Non-Vessel Owning Common Carrier or Air Carrier[.]"

14.     Clause 2 of Section IV ("General") expressly provides for insurance coverage for liability arising out of:

   a.  preparation and/or issuance of documentation;

   b.  clerical and/or documentary procedures;

   c.  failure to follow and/or provide instructions;

   d.  provision of advice or information;

   e.  delay, misdelivery or wrongful delivery of cargo;

   f.  declaration or description of cargo;

   g.  risks referred to under clause 3.1-3.3 inclusive but subject to their terms and conditions.

4

15.     Clause 3.2 of Section IV, in turn, expressly provides for insurance coverage for liability arising out of "the provision of information or documentation to a Custom's Authority or similar governmental organization, or body, or arising out of the provision of a bond or customs guarantee or other bond or guarantee for use by the Insured or in connection with a transport arranged by the Insured."

16.     The Insurance Policy was repeatedly renewed through November 1, 2014.  (*See* Exhibits 2-4.)

17.     The sub-limit of liability provided in the Insurance Policy for liability arising out of Section IV is $1,000,000.00.  (*See* Insurance Policy at Policy Declarations, Clause 8.)

## The Gryphon Lawsuit

18.     On September 19, 2014, a lawsuit was filed against the AFC Entities by Gryphon Technologies, LC.  That lawsuit, *Gryphon Technologies, LC v. AFC Worldwide Express, Inc. et al*, is ongoing before this Court at Docket Number 1:14-cv-03019-SCJ (the "Gryphon Lawsuit").

19.     The plaintiff in the Gryphon Lawsuit asserts claims for damages for (a) breach of fiduciary duty, (b) gross negligence, (c) negligence, (d) negligent misrepresentation and omission, (e) breach of contract, (f) promissory estoppel, and (g) attorneys' fees.

20.     The Gryphon Lawsuit centers on alleged actions and omissions taken by the AFC Entities relating to Gryphon's entry of certain goods owned by the United States Navy into the United States from the U.S. Naval Base in Yokosuka, Japan in November 2011 (the "Subject Entry").

21.     AFC International acted as Gryphon's customs broker for the Subject Entry.

22.     The role of a customs broker may include certain of the tasks identified in Clause 2 of Section IV of the Insurance Policy.

23.     In addition, the role of a customs broker may include providing information or documentation to a customs authority or similar governmental organization.

24.     AFC International performed some of the functions of a customs broker with regard to the Subject Entry.

25.     AFC Express acted as Gryphon's carrier for the Subject Entry.

26.     The role of a carrier may include, but is not necessarily limited to, preparation and issuance of documentation, following clerical and/or documentary procedures, following and/or providing instructions, and provision of advice or information.

27.     AFC Express performed some or all of the functions of a carrier, as noted above, with regard to the Subject Entry.

28.     In the Gryphon Lawsuit, Gryphon alleges that due to "errors, omissions, and misrepresentations" by the AFC Entities with respect to the Subject Entry, Gryphon was forced to pay $509,082.30 in duties and interest to U.S. Customs and Border Protection ("CBP"), and further that the goods in the Subject Entry should have been entered duty-free.

29.     In the Gryphon Lawsuit, Gryphon also alleges that the overpayment should have been recovered via a protest; that Gryphon requested that AFC Express and/or AFC International file a protest on Gryphon's behalf; but that AFC Express and/or AFC International failed to do so.

30.     In the Gryphon Lawsuit, Gryphon seeks compensatory damages in excess of $500,000, as well as punitive damages and attorneys' fees.

31.     Any liability incurred by the AFC Entities in the Gryphon Lawsuit, including attorneys' fees and costs associated with the Gryphon Lawsuit, are subject to insurance coverage under the Insurance Policy in an amount up to and including $1,000,000.00.

## Plaintiffs' Insurance Claims

32.     Plaintiffs timely notified Defendants of the filing of the Gryphon Lawsuit, and gave notice of Plaintiffs' insurance claim arising therefrom, by letter dated October 27, 2014.

33.     On October 28, 2014, John Ordon, AVP and Regional Claims Manager for Defendants, issued by email a Reservation of Rights with respect to the AFC Entities' liability arising out of the Gryphon Lawsuit, in which he asserts a number of coverage limitations and/or restrictions.

34.     In his October 28 email, Ordon stated that "we know nothing about the claim yet so we can't guarantee a priori that this is covered by the E&O [meaning Section IV of the Insurance Policy, "Errors & Omissions"] or any other section of the policy."

35.     Ordon further stated that the policy that covered the Subject Entry "might" have been more than one year past its expiration date at the time of Plaintiffs' loss.

36.     The insurance policy applicable to the Subject Entry was not more than one year past expiration at the time of Plaintiffs' loss.

37.     Ordon further stated that notice of potential liability was not timely given to Defendants.

8

38.     Notice of potential liability was timely given to Defendants.

39.     Ordon further stated that, on the basis of the points asserted in his October 28 email, Defendants reserved a right to deny the claim.

40.     On October 30, 2014, Ordon issued by email an Amended Reservation of Rights.

41.     In his October 30 email, Ordon asserted additional grounds that he claimed would limit or restrict Plaintiffs' coverage under the Insurance Policy.

42.     Among these purported bases for restricting coverage were purported "questions" for whether the "fault for this problem […] may be with R+L Global Logistics," a company which he claims did not fit the definition of Assured under the Insurance Policy.

43.     R+L Global Logistics is not a party to the Gryphon Lawsuit.

44.     Ordon further stated that Gryphon's claims included "willful misrepresentation," and that "[i]t is unknown whether" the customs duties incurred by Gryphon "took the form of a fine or penalty," both of which he claimed would result in limited or no coverage under the Insurance Policy.

45.     Gryphon's claims for willful misrepresentation arise out of events that took place after Gryphon's customs duties were unrecoverable; therefore, any willful misrepresentation does not give rise to liability in the Gryphon Lawsuit.

9

46.     The customs duties incurred by Gryphon were neither a fine nor a penalty within the meaning of the Insurance Policy.

47.     Ordon reserved the right to further amend the Reservation of Rights.

48.     Notwithstanding Ordon's emails, Plaintiffs have continued to defend the Gryphon Lawsuit, and have denied liability for all legal claims therein.

49.     In the time since Ordon's emails, Defendants have refused to provide information to Plaintiffs on how to obtain reimbursement and/or coverage for the claims asserted in the Gryphon Lawsuit or for their attorneys' fees incurred therein.

50.     On June 28, 2015, Plaintiffs' legal counsel contacted Defendants to again demand that Defendants take action to defend and indemnify Plaintiffs in the Gryphon Lawsuit, as Defendants are contractually obligated to do under the Insurance Policy.

51.     Defendants have not responded to Plaintiffs' demand.

52.     Costs incurred by Plaintiffs in defending the Gryphon Lawsuit, including but not limited to attorneys' fees, have to date exceeded $75,000.00.

## COUNT ONE: BREACH OF CONTRACT

53.     Plaintiffs adopt and incorporate the allegations set forth in all preceding Paragraphs of this Complaint.

54.     Plaintiffs have performed all of their obligations under the Insurance Contract.

55.     Under the Insurance Policy, Starr was obligated to defend and/or indemnify Plaintiffs for any liability and costs associated with the Gryphon Lawsuit, including but not limited to payment of attorneys' fees.

56.     Defendants breached their obligations under the Insurance Policy.

57.     As a result of Defendants' breach of the Insurance Policy, Plaintiffs have suffered damages well in excess of $75,000.00, in a precise amount to be determined at trial.

## COUNT TWO: BAD FAITH

58.     Plaintiffs adopt and incorporate the allegations set forth in all preceding Paragraphs of this Complaint.

59.     Plaintiffs have suffered and continue to suffer loss arising out of the Gryphon Lawsuit, which is covered by the Insurance Policy.

60.     Plaintiffs made a demand for coverage under the Insurance Policy at least sixty (60) days prior to filing suit, on or about October 27, 2014.

61.     Defendants have delayed and denied coverage of Plaintiffs' insurance claim in bad faith, in violation of O.C.G.A. § 33-4-6(a).

62.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered injury and damages in an amount well in excess of $75,000.00, in a precise amount to be determined at trial.

63.     Pursuant to O.C.G.A. § 33-4-6(a), Plaintiffs are also entitled to, in addition to compensatory damages for their loss, an additional fifty percent of Defendants' liability.

64.     Pursuant to O.C.G.A. § 33-4-6(a), Plaintiffs are also entitled to, in addition to the foregoing, an award of any reasonable attorneys' fees incurred in prosecuting this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs AFC International, LLC and AFC Worldwide Express, Inc. demand judgment in their favor and against Defendants Starr Indemnity & Liability Company and Starr Marine Agency of California, d/b/a Starr Marine of California Insurance Agency as follows:

1.     Compensatory damages in excess of $75,000.00 in an amount to be proven at trial;

2.     All statutory damages pursuant to Georgia law, including those provided for under O.C.G.A. § 33-4-6(a);

3.     Attorney fees, expenses, and court costs as provided by law, including as provided for under O.C.G.A. § 33-4-6(a), *and*

4.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ J. Christopher Fox II
Anthony C. White (*pro hac vice* motion forthcoming)
David J. Carey (*pro hac vice* motion forthcoming)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio 43215
Tel:   (614) 469-3200
Fax:   (614) 469-3361
Email: Tony.White@thompsonhine.com
Email: David.Carey@thompsonhine.com

J. Christopher Fox, II
Georgia Bar No. 272527
THOMPSON HINE LLP
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Office: (404) 541-2900
Fax: (404) 541-2905
Email: Chris.Fox@thompsonhine.com

*Attorneys for Plaintiffs AFC International, LLC and AFC Worldwide Express, Inc.*